Donald W. SATTERWHITE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14895.

United States Court of Appeals
District of Columbia Circuit.

Argued April 29, 1959.

Decided May 25, 1959.

Mr. Earl J. Lombard, Washington, D. C., for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

PER CURIAM.

■■ The trial judge denied the appellant's motion for a directed verdict on the ground of insanity, whereupon the jury returned its verdict of guilty of robbery. The sole question on appeal involves the sufficiency of the Government's proof of the appellant's sanity at the time of the commission of the offense where substantial evidence of insanity had been offered in behalf of the appellant.

The record shows that the appellant on January 2, 1958, had violently robbed his victim. Appellant under order of court had thereafter been committed to the District of Columbia General Hospital. There under observation for some weeks after February 3, 1958, he was committed on April 1, 1958, to St. Elizabeths Hospital because of a determination that appellant was incompetent to stand trial. On August 5, 1958, the Superintendent of St. Elizabeths certified that appellant was then mentally competent to stand trial. On October 9, 1958, at the trial the assistant chief psychiatrist at the D. C. General Hospital testified that appellant there had first been found to be suffering from a schizophrenic reaction of a paranoid type, and had been seriously disturbed mentally. The type of mental illness from which he suffered, it was shown, develops gradually. Thus was yielded the inference that such diagnosis following so shortly after the commission of the offense, related back to and included the time of the offense. Additionally, another physician, at the time of the trial specializing in psychiatry, testified that while pursuing his in-training at the D. C. General Hospital in March 1958, he had diagnosed the appellant's illness as schizophrenia of the paranoid type. Without our presently supplying additional detail, it is sufficient to observe that substantial evidence established the basis for a reasonable inference that appellant had been suffering from severe mental disturbance on January 2, 1958.

The Government introduced the testimony of the arresting officer who related his observations of the appellant at the time of the arrest. Another lay witness who had helped subdue the appellant described him as appearing to be in a daze. A staff psychiatrist at St. Elizabeths de-

scribed the course of treatment over the period between April 16, 1958, the time of admittance, and August 27, 1958, when appellant was released as competent to stand trial.[1] He was found at the outset to have had an emotionally unstable personality. The witness identified a schizophrenic reaction of the paranoid type as "a very grave illness." Although psychological tests revealed that appellant possessed an intelligence in the average range, "with possible superior potentials, bright normal," the witness was not asked for nor did he express an opinion concerning the extent of appellant's mental disturbance as of the time of the robbery.

The Government argues to us that the jury had made a reasoned choice between conflicting claims as to the mental capacity of the appellant at the time of the offense. Perhaps it did if we are to read into the record a "conflict" between a diagnosis of schizophrenic reaction of the paranoid type on the one hand and a diagnosis of an "emotionally unstable personality" on the other. But the record is barren of competent evidence on the part of the Government to demonstrate the appellant's capacity as of January 2, 1958. Before the jury was to be permitted to make what the Government calls a "choice," there was a preliminary question for the trial judge, explicitly raised by the appellant's motion for a directed verdict on the ground of insanity. That motion was denied, despite the Government's lack of evidence to establish its right to go to the jury in the light of its undoubted burden to establish sanity as one of the elements of the case it was bound to prove. Davis v. United States, 1895, 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 499.[2]

There is error, and we are bound to reverse. It will be our order that unless the Government without unreasonable delay advises the District Court that it is prepared at a new trial to prove the capacity in law of this appellant to have committed the crime charged as of January 2, 1958, the District Court should enter an order directing that the appellant be acquitted on the ground of insanity. In that circumstance, appellant will stand committed and be dealt with in accordance with the provisions of D.C. Code, § 24-301 (Supp. VII, 1959), and see Overholser v. Leach, 1958, 103 U.S. App.D.C. 289, 257 F.2d 667.

---

1. The distinction between release as competent to stand trial and discharge as sane is treated in the opinion of Judges Prettyman and Burger in Lyles v. United States, 1957, 103 U.S.App.D.C. 22, 26-27, 254 F.2d 725, 729-730, certiorari denied 1958, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed. 2d 1067.

2. Cf. Douglas v. United States, 1956, 99 U.S.App.D.C. 232, 239 F.2d 52; Wright v. United States, 1957, 102 U.S.App.D.C. 36, 250 F.2d 4; Fielding v. United States, 1957, 102 U.S.App.D.C. 167, 251 F.2d 878.